IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 7 |
| ) | |
| MOBCLIX, INC., ) | Case No. 13-12887 (PJW) |
| ) | |
| Debtor. ) | |
| ) | Objections Due: TBD |
| ) | Hearing Date: January 9, 2014 at 2:00 p.m. (ET) |

**MOTION OF GEORGE L. MILLER, CHAPTER 7 TRUSTEE, FOR AN ORDER APPROVING AGREEMENT FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362 AND RULES 4001(d) AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

George L. Miller, Chapter 7 Trustee (the "**Trustee**") of Mobclix, Inc. (the "**Debtor**" or "**Mobclix**"), by and through his undersigned counsel, hereby brings this Motion for an Order Approving Agreement for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362 and Rules 4001 (d) and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Motion**"), and in support thereof represents as follows:

## JURISDICTION

1.  This matter arises under 11 U.S.C. § 362(d) and is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334.

## BACKGROUND

1.  On November 4, 2013 (the "**Petition Date**"), the Debtor filed a voluntary petition (the "**Petition**") for relief under chapter 7 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"). On December 18, 2013, the Debtor filed its Statements of Financial Affairs ("**SOFAs**") and Schedules. (D.I. 11 and 12).

2. Shortly after the Petition Date, the Office of the United States Trustee appointed the Trustee as chapter 7 trustee for the Debtor's case, which appointment remains in effect.

3. Mobclix was a guarantor pursuant to a Guarantee and Collateral Agreement dated as of August 10, 2012 (the "**Guarantee Agreement**") with respect to a Credit Agreement dated as of August 10, 2012 by and among Velti Inc., Velti PLC, Mobile Interactive Group Limited and Velti Mobile Platforms Limited, as the Borrowers (collectively, the "**Velti Borrowers**"), and HSBC Bank USA, National Association ("**HSBC**") as Administrative Agent (together with the Guarantee Agreement and all ancillary and related agreements, the "**Prepetition Credit Agreement**").

4. Pursuant to an Assignment and Assumption Agreement dated as of November 1, 2013 (the "**Assignment Agreement**"), HSBC assigned its rights under the Prepetition Credit Agreement to GSO Credit-A Partners LP, GSO Palmetto Opportunistic Investment Partners LP and GSO Coastline Partners LP, each as a Lender (collectively, "**GSO**").

5. Also on November 4, 2013, one of the Velti Borrowers, along with certain other entities who were guarantors under the Prepetition Credit Agreement, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

6. GSO has claimed a lien on substantially all of Mobclix' assets, including without limitation cash, accounts receivable and intellectual property (the "**Prepetition Collateral**"), pursuant to the terms of the Prepetition Credit Agreement and the Assignment Agreement.

7. GSO claims that as of the Petition Date, approximately $57 million of aggregate principal amount was outstanding under the Prepetition Credit Agreement, for which it claims Mobclix is jointly and severally liable.

8. GSO advised the Trustee of its intent to file a motion pursuant to Section 362 of

the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") to seek relief from the automatic stay in order to exercise its rights and remedies as an alleged secured creditor with respect to the Prepetition Collateral ("**Stay Relief Claim**").

9. The Trustee has had an opportunity to review the Prepetition Credit Agreement, Assignment Agreement, and evidence of liens on the Prepetition Collateral to the benefit of GSO.

## RELIEF REQUESTED

10. The Trustee and GSO (collectively, the "Parties") desire to resolve any issues regarding GSO's Stay Relief Claim without the necessity of litigation. For that purpose, the Parties have determined to enter into a Settlement and Release Agreement for Relief from the Automatic Stay (the "Agreement"), in the form attached hereto as Exhibit "1."

11. The Agreement terms set forth in this Motion are intended as a summary for the Court and all interested parties, and for the full and controlling terms of the Agreement, all parties are directed to the Agreement attached hereto as "Exhibit "1". As required by Bankruptcy Rule 4001 (d)(1)(B), the Trustee provides the following concise statement of the Agreement terms consistent with the subject areas set forth in Bankruptcy Rule 4001 (c)(1)(B), to the extent applicable:

    a. Upon the Effective Date of the Agreement, the "**Conveyed Collateral**,"[1] consisting of the Accounts Receivable, the Intellectual Property and Debtor funds exceeding $400,000, shall be conveyed to GSO.

    b. GSO waives and relinquishes for the benefit of the Debtor's estate, any and all claims it has or may have with respect to $400,000.00 in funds from the Debtor's bank accounts (the "**Excluded Collateral**").

---

[1] All capitalized terms not defined herein shall be given the meaning assigned to them in the Agreement.

3

c.  Any proceeds received by the Trustee in connection with the Accounts Receivable listed on Schedule A to the Agreement shall be held in trust by the Trustee and turned over to GSO by check or wire transfer.

d.  GSO agrees to turn over to the Trustee any cash recovery that GSO or its agent or designee may receive from any affiliate of Mobclix solely on account of an intercompany payable (if any) owed by Mobclix to such affiliate.

e.  GSO agrees to accept the Trustee's transfer and conveyance of all of the Debtor's right, title and interest in the Conveyed Collateral in exchange for GSO's release of its liens on the Prepetition Collateral (other than the Conveyed Collateral), and GSO agrees that any proofs of claim it files against the Debtor's estate for any claim on account of the Prepetition Credit Agreement shall be subordinated to all allowed general unsecured claims against Mobclix until all such allowed general unsecured claims are paid in full (the "**Subordinated Claim**"). For the avoidance of doubt, the Trustee and GSO reserve all rights with respect to such proofs of claim.

f.  The Trustee retains any claims that may be asserted under Chapter 5 of the Bankruptcy Code or state fraudulent transfer statutes, and causes of action the Trustee may assert against any officers, directors, members, agents or other representatives of the Debtor, subject to the Trustee's agreement not to prosecute certain parties as set forth in the Agreement.

g.  The Trustee and GSO provide each other with mutual releases, subject to certain limited carveouts.

h.  The Parties agree to and shall execute and deliver documents and instruments as may be reasonably requested in order to consummate the terms of the Agreement and evidence the transactions set forth therein.

i.  GSO or its designee shall provide the Trustee with reasonable access to all records and electronically stored data to the full extent required by law.

## BASIS FOR RELIEF

12. In relevant part, section 362(d) of the Bankruptcy Code provides as follows:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –

> (1) for a cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section if –
>   (A) the debtor does not have an equity interest in such property; and
>   (B) such property is not necessary to an effective reorganization…

13. Based on GSOs claimed liens, the Debtor may not have an equity interest in the Conveyed Collateral. In addition, all of the Debtor's cash may be cash collateral of GSO.

14. Further, the requirement set forth in section 362 (d)(2)(B) is mooted in a chapter 7 case, as the property is not necessary to a reorganization as the assets will be liquidated. *In re J&M Salupo Dev. Co.,* 388 B.R. 809, 812 – 13 (Bankr. N.D. Ohio 2008)(citations omitted).

15. Based on the Debtor's Schedules and SOFAs, the estate is unable to provide adequate protection for GSO's claimed interest in the Prepetition Collateral. Furthermore, by consenting to the lifting of the stay and entering into the settlement agreement, the Debtor's estate is benefited by obtaining $400,000 of now-unencumbered cash and retaining the vast majority of its causes of actions and avoidance actions.

16. A court is to look at the totality of the circumstances in determining whether to waive the 14 days stay period for an order granting relief from the automatic stay, Here, part of the Conveyed Collateral is Accounts Receivable, a large percentage of which is over 90 days old. Under these circumstances, in order to allow recovery efforts to be undertaken as soon as possible, it is requested that the Court waive the 14 day stay period. *See In re Taub,* 438 B.R. 39 (Bankr. E.D. N.Y. 2010).

17. The procedure for approving a settlement in bankruptcy is set forth in Bankruptcy Rule 9019, which provides that after a notice and hearing, the court may approve a compromise

or settlement, with notice to be given to creditors, the United States trustee, the debtor, parties as provided for in Bankruptcy Rule 2002, and to any other entity as the court may direct.

18. This Court also has authority to approve the Agreement pursuant to Bankruptcy Rule 9019. *Key3Media Group, Inc. v. Puliver.com Inc. (In re Key3Media Group, Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005). In fact, compromises, such as those provided by the Agreement, "are favored in bankruptcy" because they "minimize litigation and expedite the administration of a bankruptcy estate." *In re Martin*, 91 F.3d at 393 (citing Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)).

19. In evaluating the execution of the Agreement to settle the Parties' disputes, this Court should not substitute its judgment (or that of any other party) for that of the Trustee. *In re Edwards*, 228 B.R. 552, 569 (Bankr. E.D. Pa. 1998). Instead, this Court should evaluate "whether the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's Inc.*, 211 B.R. 798, 801 (D.Del. 1997); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243 (D. Del. 1998) (proposed settlement held in best interest of the estate). The "best interest" test requires that the proposed settlement be "fair and equitable." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Key3Media Group*, 336 B.R. at 92. In evaluating the fairness of a settlement, a court does not have to be convinced that the settlement is the best possible compromise, but only that the settlement falls within the reasonable range of litigation possibilities. *See In re Washington Mutual, Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011); *In re Capmark Fin. Group Inc.*, 438 B.R. 471, 515 (Bankr. D. Del. 2010); *In re World Health Alt., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). Thus, a court should approve a settlement if the proposed agreement does not fall beneath the "lowest point in the range of reasonableness." *Washington Mutual*, 442 B.R. at 328; *In re Coram Healthcare Corp.*, 315 B.R.

321, 330 (Bankr. D. Del. 2004); see also *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 613 (2d Cir. 1983) ("We conclude by reemphasizing that the task of the bankruptcy judge was not to determine whether the settlement was the best that could have been obtained, something that neither he nor we can ever know, but whether it fall[s] below the lowest point in the range of reasonableness.") (emphasis added) (internal quotations omitted).

20.  The Third Circuit has identified four factors that courts should consider in determining whether a settlement falls within the lowest point in the range of reasonableness: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interest of the creditors. *In re Martin*, 91 F.3d at 393; see also *Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644-45 (3d Cir. 2006) (reaffirming use of the Martin factors).

21.  Here, as discussed above, it is highly unlikely the Trustee would prevail if GSO filed a lift stay motion. Without equity in the property, a business to reorganize or funds to defend such a motion, it is probable that a motion to lift the stay would be granted. The litigation related to such a motion would be complex because the parties would be required to litigate issues related to the valuation of the Debtor's business. Such litigation would take time and result in the further aging of the Debtor's accounts receivable, thereby negatively impacting the value of such assets. Finally, the interests of creditors are best served by entering into the Agreement because the estate is receiving $400,000 of cash and is obtaining a release of nearly all liens on the Debtor's assets while it is only "giving up" assets on which GSO has valid liens. Accordingly, the standards for Rule 9019 are met.

## NOTICE

22. Notice of this Application has been given to counsel for the Debtor, the Office of the United States Trustee, counsel to GSO and all parties who have requested notice pursuant to Fed. R. Bankr. P. 2002. The Trustee submits that no further notice is required and requests that the Court determine the notice given is adequate and proper.

## CONCLUSION

WHEREFORE, for the reasons set forth above, George L. Miller, the Chapter 7 Trustee for Mobclix, Inc., respectfully requests that the Court enter the Proposed Order accompanying this Motion (a) approving and authorizing the Trustee's entry into the Agreement, attached both hereto and to the Proposed Order as Exhibit "1," (b) terminating the automatic stay to authorize the Trustee's entry into the Agreement and convey the Conveyed Collateral; (c) waiving the fourteen day stay under Bankruptcy Rule 4001 (a)(3); and (d) granting such other relief as is just and proper.

Dated: December 24, 2013
Wilmington, Delaware

/s/ Linda Richenderfer
Linda Richenderfer (DE Bar No. 4138)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:  (302) 426-1189
Facsimile:  (302) 426-9193
Email: :  lrichenderfer@klehr.com

*Proposed Counsel for George L. Miller, Chapter 7 Trustee for Mobclix, Inc.*